IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YESS TRUST<br><br>*and*<br><br>SEEMA MAHESHWARI,<br><br>Plaintiffs,<br><br>v.<br><br>DEVONDA L. WALKER<br>*a/k/a* DEVONDA L. WALKER RISHON,<br><br>THE MANNA RESTAURANT GROUP LLC *d/b/a* TMG: CHAI FOODS,<br><br>*and*<br><br>1633 WEST VIRGINIA AVE NE LLC<br><br>Defendants. | Case No. |

**<u>COMPLAINT</u>**

Plaintiffs YESS TRUST ("YESS") and SEEMA MAHESHWARI ("Ms. Maheshwari") (collectively "Plaintiffs"), by and through their undersigned counsel, hereby file their Complaint, stating as follows:

1. This case arises from a series of frauds that Defendant Devonda L. Walker ("Ms. Walker"), directly and indirectly perpetrated against Plaintiffs.

2. Ms. Walker presented herself to Ms. Maheshwari as a fellow entrepreneur, cultivated what Ms. Maheshwari understood to be a friendship, and repeatedly used that trust to obtain money. Through two purported business entities that might not actually exist, Ms. Walker induced YESS, a trust controlled by Ms. Maheshwari, to "invest" hundreds of thousands of dollars

in apparent sham ventures. In the same course of conduct, Ms. Walker also convinced Ms. Maheshwari to send a separate "donation" for a supposed person in need.

3. None of those transactions appear to have been legitimate, and no evidence seems to exist that either alleged venture ever commenced. Similarly, despite requests that she do so, Ms. Walker never provided subsequent documentation for the donation.

4. Even assuming *arguendo* that Ms. Walker lacked fraudulent intent at the outset of the ventures, she and/or her alleged entities accepted YESS's monies under written agreements with the promise of returns on investment, apparently failed to proceed with the alleged projects, provided no credible explanation for the failures, failed to deliver the promised returns, and ultimately refused to deliver on repeated promises to refund the monies.

5. YESS asserts claims against Ms. Walker and her alleged companies for (i) common law fraud, (ii) violations of Section 109b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j) and Securities and Exchange Commission ("SEC") Rule 10b-5, (iii) breach of contract, and (iv) unjust enrichment. Ms. Maheshwari asserts a claim against Ms. Walker for common law fraud relating to the donation.

**PARTIES**

6. YESS is a spendthrift trust organized under the laws of the State of New York and having an address at 5416 Raintree Court, Buffalo, NY 14221. Ms. Maheshwari and her husband are YESS's co-trustees, and YESS's two beneficiaries are residents of the State of New York and Commonwealth of Virginia, respectively.

7. Ms. Maheshwari is a resident of the State of New York.

8. Ms. Walker is an individual who, upon information and belief, worked and resided in the District of Columbia at all times relevant to this case but currently resides in the State of Maryland.

9. Ms. Walker has held herself out as "Investment Broker, Principle [sic] LLC Member" of Defendant 1633 West Virginia Ave NE LLC ("1633 WVANE").

10. Ms. Walker has represented that 1633 WVANE is a "Washington, D.C. Limited Liability Corporation [sic]," though a District of Columbia Corporations Division website business search yields no evidence of the entity's formation, registration, or existence. Further, Plaintiffs are unaware of any office address – principal or otherwise – for 1633 WVANE.

11. Ms. Walker has held herself out as "Investment Broker, Principle [sic] LLC Member" of Defendant The Manna Restaurant Group LLC d/b/a TMG: Chai Foods ("TMG").

12. Ms. Walker has represented that TMG is a "Washington, D.C. Limited Liability Corporation [sic]," though a District of Columbia Corporations Division website business search yields no evidence of the entity's formation, registration, or existence. Further, Plaintiffs are unaware of any office address – principal or otherwise – for TMG.

**JURISDICTION AND VENUE**

13. Ms. Walker is subject to personal jurisdiction in the District of Columbia pursuant to D.C. Code § 13-423 as, *inter alia*, the causes of action asserted against her arise from her transaction of business in the District of Columbia.

14. 1633 WVANE and TMG are purported District of Columbia limited liability companies and therefore are subject to the personal jurisdiction of this Court pursuant to D.C. Code § 13-422. They also are subject to personal jurisdiction pursuant to D.C. Code § 13-423 as,

*inter alia*, the causes of action asserted against them arise from their purported transaction of business in the District of Columbia.

15. Venue in this Court is appropriate pursuant to 28 U.S.C. § 1391(b)(2). In the alternative, venue is appropriate pursuant to 28 U.S.C. § 1391(b)(1).

16. This Court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. §§ 1331 (Federal Question Jurisdiction), 1332 (Diversity of Citizenship), and 1367 (Supplemental Jurisdiction).

## FACTS

### I. Ms. Walker Meets and Apparently "Grooms" Ms. Maheshwari

17. Ms. Walker and Ms. Maheshwari met through their respective memberships in a private investor group associated with the JT Foxx Organization (the "Foxx Group"). The Foxx Group presents itself as a vetted community of investors with substantial assets, with members charged fees to join and provided with a platform for meetings.

18. For her part, Ms. Walker presented herself as an entrepreneur and investment broker operating through multiple business entities in the Washington, D.C. area.

19. The two women soon developed a relationship outside the Foxx Group's confines. Ms. Walker appealed to a sense of shared identity, presenting herself as a fellow woman of color and non-Christian who understood the particular challenges facing minority women in business and investment. Ms. Maheshwari, in response, extended to Ms. Walker a degree of trust and goodwill that she might not otherwise have afforded to others in the Foxx Group. In fact, she even expressed a desire for Ms. Walker to meet her daughter.

20. Ms. Walker used that privately cultivated trust to solicit investment opportunities directly from Ms. Maheshwari rather than through the Foxx Group itself. She approached Ms.

Maheshwari individually regarding both the purported 1633 WVANE venture and the purported TMG venture – presenting each as a legitimate investment opportunity under her control and furnishing materials designed to convey legitimacy, professionalism, and project readiness.

## II. The Alleged "Investments"

21. It was against this backdrop of cultivated personal trust that Ms. Walker introduced Ms. Maheshwari to purported investment opportunities.

22. The two alleged opportunities shared multiple commonalities. First, Ms. Walker contacted Ms. Maheshwari directly regarding each rather than pitching them to the Foxx Group. Second, Ms. Walker presented each venture as being conducted through its own District of Columbia-formed single-purpose entity that she owned and controlled. Third, the District of Columbia Corporations Division's website contains no evidence of either supposed "District of Columbia" entity's existence. Fourth, Ms. Walker communicated with Plaintiffs exclusively through text messages from her personal phone number and through a personal or otherwise unaffiliated email address (devon@tiferetinc.com) rather than through any corporate email address or communication channel associated with the purported entity involved. Fifth, upon information and belief, there exists no other indicia, such as bank accounts, employees, or contractors – of either entity's separate existence. Sixth, Plaintiffs are aware of no evidence that either alleged project commenced or even ever existed. Seventh, Ms. Walker initially promised to return the investment monies but then refused to do so.

23. To the extent that the entities actually exist, Ms. Walker, upon information and belief, exercises complete control over the operations, finances, and decision-making of both entities. Further, upon information and belief, each entity is inadequately capitalized and lacks sufficient assets to satisfy any contractual obligations. Lastly, upon information and belief, Ms.

Walker has failed to observe corporate formalities and has commingled her personal finances with the finances of both entities.

### A. The Fruitless "1633 WVANE" Venture

#### 1. Inducement and Resulting Contract

24. In or around May 2024, Ms. Walker solicited Ms. Maheshwari to invest in 1633 WVANE. Rather than communicate this opportunity via the Foxx Group, Ms. Walker approached Ms. Maheshwari directly and privately in discussions – including an in-person meeting at which they also discussed other investment opportunities – occurring in Washington, D.C.

25. According to Ms. Walker, she desired to work with like-minded women of color and was contacting additional women of color to join the venture.

26. Ms. Walker represented that the plan was for 1633 WVANE to effect a condominium conversion process at a certain four-unit building located at 1633 West Virginia Ave NE, Washington, DC 20002 (the "Condo Project").

27. Through a related March 14, 2024 prospectus that she provided to Ms. Maheshwari (the "Prospectus"), Ms. Walker further represented that (i) investors would join 1633 WVANE as members of the LLC; (ii) the project would generate a 30% return on investment; and (iii) a local architecture firm, Ballard + Mensua Architecture, would oversee the project design and implementation. Ms. Walker did not, at any time, provide other written information related to the purported investment opportunity.

28. To further induce Ms. Maheshwari to invest in 1633 WVANE, Ms. Walker furnished documentation concerning Plus One Realty LLC ("Plus One"), a District of Columbia entity of which Ms. Walker was the sole member and whose stated purpose was "real estate sales

/ consulting." This documentation included a certificate of good standing, operating agreement, and IRS CP 575 notice assigning an employer identification number to Plus One.

29. Records available through the District of Columbia Corporations Division website reflect that Plus One's entity formation filing occurred on March 11, 2024 and became effective on March 19, 2024.

30. Current District of Columbia records reflect that the current status of Plus One is "revoked," as a biennial report due on April 1, 2025 was not filed. Those same records, in fact, reflect no filing activity after the entity's initial filing.

31. The Prospectus identified Ms. Walker as "Owner Plus One Realty" and stated that she would "[o]versee overall project execution." Upon information and belief, Ms. Walker provided the Plus One materials and invoked Plus One in the Prospectus to create the appearance that the Condo Project was associated with a legitimate real-estate business that she controlled and thereby to induce YESS's investment.

32. Plaintiffs entered into no agreement with Plus One, however, and are unaware of any legitimate business role that Plus One actually played in the purported Condo Project.

33. On or about May 24, 2024, YESS entered into a written Investment Agreement with 1633 WVANE (the "First Investment Agreement"). *See Exhibit A*, attached hereto.

34. Ms. Maheshwari, as trustee of YESS, signed the First Investment Agreement on that trust's behalf. Ms. Walker, as supposed "Investment Broker, Principle [sic] LLC Member" of 1633 WVANE, signed on behalf of that entity.

35. Pursuant to the First Investment Agreement, YESS agreed to remit to 1633 WVANE a cash payment of $150,000 as its investment in the Condo Project.

36. In return, 1633 WVANE agreed to pay YESS the initial investment amount plus, upon the Condo Project's closing, an amount equal to 30% of YESS's total investment.

37. Closing, according to the First Investment Agreement, was "tentatively scheduled for early spring 2025."

38. Plaintiffs played no role in managing or operating the Condo Project. The project's profits were to be derived solely from the efforts of 1633 WVANE and Ms. Walker in effecting the condo conversion.

39. On or about May 24, 2024, YESS remitted a sum of $150,000 to 1633 WVANE via electronic wire transfer. Upon information and belief, rather than being received by any account held in the name of 1633 WVANE, the funds were deposited directly into an account held in the name of Devonda L. Walker personally at PNC Bank, National Association.

**2. Failure by Ms. Walker/1633 WVANE to Perform**

40. The "early spring 2025" deadline under the First Investment Agreement passed without any payment from 1633 WVANE or Ms. Walker and without Plaintiffs' receipt of any substantive update regarding the alleged Condo Project's status.

41. Publicly available information concerning the property located at 1633 West Virginia Ave NE is inconsistent with Ms. Walker's representations regarding the purported Condo Project. Whereas the Prospectus had identified the property's "Listing Price" as $1,080,000, public listing history available on Redfin and Zillow reflects that, on or about August 1, 2024 – months after Ms. Walker had already obtained YESS's investment in the purported Condo Project – the property was placed on the market for sale at that same $1,080,000 asking price.

42. Rather than reflecting any acquisition or development by 1633 WVANE, in fact, the same listing history reflects that the property has not been sold since November 21, 1991. The listing also shows repeated removals, re-listings, and price changes through 2025 and into 2026.

43. As of the date of this Complaint, Redfin and Zillow still reflected the property as "under contract," and identified Samson Properties as the listing brokerage.

44. The Samson Properties website identifies Ms. Walker as a realtor affiliated with the brokerage and based in its Washington, D.C. NoMa office.

45. Upon information and belief, the prospectus's use of the identical $1,080,000 "Listing Price" months before the property formally appeared on the market reflects that Ms. Walker was using professional knowledge of the property and its anticipated listing details in presenting the purported Condo Project.

46. At the same time, there is no indication that 1633 WVANE ever acquired title to or control over the property. "1633 West Virginia Ave NE LLC" is not listed in property records as a current owner of the subject property, and, upon information and belief, no progress was made on the alleged Condo Project.

47. Upon information and belief, the Condo Project never existed or was never intended to be completed, and the First Investment Agreement was merely a device to fraudulently obtain monies from YESS.

**B. The Fruitless "TMG" Venture**

**1. Inducement and Resulting Contract**

48. During an in-person meeting in Washington, DC in or about August 2024, Ms. Walker pitched Ms. Maheshwari about a possible investment in TMG.

49. According to Ms. Walker, TMG would develop an upscale, high-end kosher grocery store (the "Grocery Store Project"). She further represented that the grocery store would be the first of its kind in Washington, DC and that the venture would operate from a sizeable Dupont Circle location with the amenities necessary to support a high-end market concept.

50. Ms. Walker did not present the TMG venture as a wholly separate investment from YESS's previous 1633 WVANE investment. Rather, she represented in substance that Plaintiffs' existing $150,000 investment in the purported 1633 WVANE venture would be carried forward, incorporated, or otherwise rolled into an aggregate investment of $200,000.

51. Although she invoked a different entity name and a different purported project, Ms. Walker treated the prior Condo Project investment and the proposed Grocery Store Project investment as components of a single, continuing investment relationship. She thus induced Ms. Maheshwari into believing that the funds already entrusted to her in connection with 1633 WVANE would remain protected and would be carried into a new opportunity under revised paperwork.

52. Ms. Walker did not, at any time, provide a private placement memorandum or other written information related to the purported investment opportunity.

53. On or about August 14, 2024, before any written agreement concerning TMG was executed, Ms. Walker directed Ms. Maheshwari to remit $50,000 in connection with the Grocery Store Project via check instead of wire transfer. Further, notwithstanding her presentation of TMG's project as part of an ongoing investment relationship tied to Plaintiffs' earlier investment in 1633 WVANE, Ms. Walker did not direct Plaintiffs to remit funds to TMG itself. When Ms. Maheshwari asked whether the check should be made payable to 1633 WVANE, Ms. Walker directed her to "make it out to me and put the LLC in the memo."

54. On or about August 14, 2024, Ms. Maheshwari, consistent with Ms. Walker's instruction and relying on Ms. Walker's representations, caused the issuance of a $50,000 check payable to "Devonda Walker" personally. The check further identified "1633 West Virginia Ave WE LLC" in the memo line.

55. Also at Ms. Walker's direction, the check was not transmitted to any TMG office, business address, or financial institution. Instead, Ms. Maheshwari was to – and did – send it by overnight mail to Ms. Walker at 46 Bayview Avenue, Sag Harbor, NY 11963. That address was not a business address of either TMG or 1633 WVANE, but rather, upon information and belief, a seasonal vacation rental property at which Ms. Walker was staying while vacationing "in the Hamptons."

56. After receiving the check in Sag Harbor, Ms. Walker represented that she did not deposit it there. She stated that, because she was in the Hamptons, she "mailed the check to [her] banker" at her local PNC branch in the Washington metropolitan area for deposit on her behalf.

57. The deposit did not proceed normally. Instead, Ms. Walker contacted Ms. Maheshwari in a panic, reporting that her bank had flagged the transaction as potentially fraudulent and that she was unable to resolve the issue herself. Ms. Walker's bank went so far as to contact not only Ms. Maheshwari's husband, but also her daughter and sister, who had no involvement in the transaction or in YESS's affairs, in connection with its fraud inquiry.

58. At Ms. Walker's urging, Ms. Maheshwari took steps to advocate for Ms. Walker and assure her bank of the transaction's legitimacy so that the funds could be transferred.

59. Ms. Walker offered shifting explanations for the supposed bank verification problem. At one point, she stated that her "banker [was] on hold with the bank office." At another, she claimed that additional confirmation had been imposed by the back office because of the "high

volume activity" of her account. She further represented that withdrawals within five days of deposit triggered heightened security review.

60. On or about August 19, 2024, after Ms. Maheshwari communicated with the depository bank and took steps on Ms. Walker's behalf to verify the transaction's legitimacy, the payment was deposited into Ms. Walker's personal PNC Bank account.

61. When Ms. Maheshwari texted Ms. Walker to confirm that the check had cleared, Ms. Walker thanked her for the verification and promised to "send the revised documents before the close of the week" – thereby indicating that written documentation for the transaction still had not yet been provided at the time the $50,000 payment was deposited. Upon information and belief, Ms. Walker's "revised documents" statement referred to the forthcoming investment agreement specific to the Grocery Store Project.

62. It was not until about October 1, 2024 – approximately six weeks after remittance of the $50,000 payment – that YESS entered into a written Investment Agreement with TMG (the "Second Investment Agreement"). *See* Exhibit B, attached hereto.

63. Ms. Maheshwari, as trustee, signed the Second Investment Agreement on behalf of YESS. Ms. Walker, as supposed "Investment Broker, Principle [sic] LLC Member" of TMG, signed on that entity's behalf.

64. Pursuant to the Second Investment Agreement, the parties contemplated an investment of $200,000 in the Grocery Store Project. As Ms. Walker had represented to Ms. Maheshwari, that $200,000 figure combined YESS's earlier $150,000 investment in 1633 WVANE with the additional $50,000 she later solicited for the Grocery Store Project. In effect, the two alleged ventures were supposedly combined into a single investment relationship.

65. In return for the investment, TMG agreed to pay YESS the initial investment amount plus – on or before July 1, 2025 – an amount equal to 30% of YESS's total investment. The version of the Second Investment Agreement initially executed by the parties on October 1, 2024 tied repayment to TMG: Chai Foods's grand opening, which, Ms. Walker represented was tentatively scheduled for Spring 2025.

66. Plaintiffs were to have no role in managing or operating the Grocery Store Project. The profits were to be derived solely from the efforts of TMG and Ms. Walker in developing and operating the grocery store.

67. After execution of the initial version of the Second Investment Agreement, Plaintiffs requested revised documentation that would state a definite payment date rather than leave repayment contingent on the grand opening of a purported future store.

68. Ms. Walker, however, did not promptly provide that revised documentation. Instead, she delayed for months while retaining Plaintiffs' funds and leaving the repayment obligation tied to an indefinite future event. During that time, Ms. Maheshwari inquired repeatedly regarding the delayed revision.

69. On February 5, 2025, months after YESS had remitted funds and months after execution of the original version of the Second Investment Agreement, Ms. Walker finally provided Plaintiffs with a revised version of that document. The new version (i) stated that it had been amended "for specific clarification on payment remittance date"; and (ii) revised the repayment provision to state that TMG would remit YESS's initial investment amount, plus return on investment, "on or before 7/1/2025."

### 2. Failure by Ms. Walker/TMG to Perform

70. The July 1, 2025 deadline under the Second Investment Agreement passed without any payment from TMG or Ms. Walker and without any substantive update regarding the status of the Grocery Store Project.

71. When Ms. Maheshwari asked Ms. Walker to identify the address of the purported Grocery Store Project, Ms. Walker refused to provide it. Ms. Walker nevertheless furnished Plaintiffs with a document purporting to schedule a November 3, 2024 "Chai Foods" investor meeting, including a "Private tour & discussion of Chai Foods / Aisle 18 alongside TMG architect" and a "Chai Food Presentation alongside Business Plan w/ Q&A." Upon information and belief, no such meeting occurred or was ever intended to occur.

72. That document further represented specific details about the purported property and project, including that (i) the grocery store would "be the first upscale Kosher grocery market, just over 10,000 sq ft in the [sic] Dupont Circle, Washington, DC"; (ii) the anticipated market consisted of a "[d]aytime population of over 200,000 people with an average household income of $185,769"; and (iii) "[t]he property boasts a huge outdoor dining area in addition to an indoor café space which will offer premium wi-fi, daily specials for community members who form a minyan, and an exclusive speakeasy."

73. Upon information and belief, no kosher grocery store was ever developed or opened.

74. Upon information and belief, the Grocery Store Project never existed or was never intended to be completed, and the Second Investment Agreement was merely a device to fraudulently obtain money from YESS.

## III. Ms. Walker's Continuing Misrepresentations and Exploitation of Plaintiffs' Trust

75. On or about October 8, 2024, after Ms. Walker had already solicited and obtained large sums of money from Plaintiffs in connection with the purported investments in 1633 WVANE and TMG, she again drew on the trust she had cultivated with Ms. Maheshwari. Specifically, Ms. Walker contacted Ms. Maheshwari in a supposed panic regarding a woman supposedly connected to the religious community of Ms. Walker's husband, Rabbi Shais Rishon.

76. According to Ms. Walker, that woman had "reached out to [her] directly in distress" and was "trying to relocate back to VA from NY with her two children due to domestic abuse." Ms. Walker stated that the woman needed money for "bus fare for three, hotel, medication and food."

77. In the same exchange, Ms. Walker urged immediate action, representing that she had told the woman she would "do all [she] can before 4pm." She told Ms. Maheshwari that she was "reaching out to all [her] network to see who all can help" and added that Rabbi Rishon "would be blown away to see how his wife was able to step in." Moreover, Ms. Walker framed the request as a matter not only of urgency, but also of moral obligation, stating, "[o]f course I'm going to help right? That's how we were raised to be."

78. Ms. Walker represented in a separate text message that she herself was "offering to reimburse people as well," further encouraging Ms. Maheshwari to send money in reliance on Ms. Walker's request and assurances.

79. Ms. Walker directed Ms. Maheshwari to remit the payment through Venmo to "Lishmahh Publication Society" at @lpsociety.

80. Ms. Maheshwari, relying on her trust in Ms. Walker, promptly remitted $500 on October 8, 2024, at Ms. Walker's direction. The payment, however, was ultimately transmitted to

a different Venmo account, @oecdc, associated with an organization named "Ohel Eidot CHeMDaT"A."

81. Ms. Walker, again invoking supposed banking issues, returned to Ms. Maheshwari the following day with another request for money. According to Ms. Walker, she had been providing a donation match but her card had been shut down after being flagged for an unauthorized charge. She asked Ms. Maheshwari to send an additional $1,000 by Zelle or Venmo, promising that she would send it back as soon as she arrived home.

82. Ms. Maheshwari did not send that additional payment.

## IV. Ms. Walker's Efforts to Evade Responsibilities

83. Even more disturbing and alarming than the missed deadlines was Ms. Walker's evasive behavior regarding the various transactions.

84. Because she needed it for tax purposes, Ms. Maheshwari made multiple requests for documentation surrounding the $500 "emergency" payment that she had made via Venmo. Nonetheless, Ms. Walker never provided a receipt or any other confirmation of how the funds had been used.

85. Similarly, for months after entering into the investment agreements, YESS received little to no communication from Ms. Walker, 1633 WVANE, or TMG regarding the status of either the Condo Project or Grocery Store Project.

86. On or about January 13, 2025, Ms. Walker sent Ms. Maheshwari an email acknowledging delays and providing various excuses, including that she had recently married a public figure and was managing multiple businesses and investments. In the email, Ms. Walker stated that she was "head down, super locked in focused" and unable to address matters until projects were complete and all investors were satisfied. Notably, the email made no distinction

between the two purportedly separate investments or the two entities through which they had been made.

87. Further, Ms. Walker not only failed to provide details regarding the purported grocery store, but also expressly refused to reveal the store's supposed address when asked by YESS's counsel.

88. Ms. Walker, who had used YESS's funds for nearly a year without delivering on either alleged project, went as far as to accuse YESS of breach of contract and indicating that she would return only the initial investment minus unspecified fees.

89. Unable to obtain satisfactory responses from Ms. Walker regarding either investment, Ms. Maheshwari sent an email on or about April 4, 2025 to Ms. Walker's husband, Rabbi Rishon. Rabbi Rishon acknowledged his awareness of the dispute but simply advised Ms. Maheshwari to defer to her attorney.

90. Spring 2025 and July 1, 2025, the respective deadlines under the First and Second Investment Agreements, passed without any payment from 1633 WVANE or TMG.

91. Months later, on October 13, 2025, Ms. Walker sent Ms. Maheshwari an email promising that "[o]ur accounting team" would return YESS's investment no later than October 31, 2025 via cashier's check or electronic wire. The reference to "[o]ur accounting team" did not specify whom – 1633 WVANE, TMG, or her – the term "our" had referenced. At the very least, she seemed to be treating YESS's separate investments in two ostensibly distinct corporate entities as a single pooled fund.

92. October 31, 2025 came and went with no payment.

93. On November 13, 2025, Ms. Maheshwari inquired via email about the missed October 31 deadline.

94. On November 18, 2025, Ms. Walker sent a reply claiming that there had been a "slight funding delay." When Ms. Maheshwari followed up asking why she should have to chase Ms. Walker for updates instead of receiving them as a matter of course, Ms. Walker remarkably made the following statement: "Due to your actions, you are a lower priority. That is why…. Style, grace, with class gets you treated as a high priority."

95. Ms. Walker's subsequent communications grew increasingly hostile, culminating in an email accusing in which Ms. Walker accused Ms. Maheshwari of racism and told her to "get off my line."

96. To date, neither 1633 WVANE, TMG, nor Ms. Walker has remitted any portion of YESS's investments or the promised returns.

97. Ms. Walker's pattern of behavior – from the failure to provide basic business information like an address for the purported grocery store, to the shifting excuses, missed deadlines, false promises of repayment, and ultimately hostile deflection when confronted – suggests that she had never intended to honor the investment agreements or return YESS's funds.

**COUNT I**
**COMMON LAW FRAUD**
**(YESS vs. All Defendants)**

98. Plaintiffs allege and incorporate by reference the factual allegations set forth above as if fully set forth herein.

99. Ms. Walker, acting on behalf of herself and the corporate defendants, made material misrepresentations of fact to YESS, including but not limited to the following:

A. That 1633 WVANE was a validly formed and operating entity undertaking a legitimate condominium conversion project;

B. That TMG was a validly formed and operating entity developing a legitimate upscale kosher grocery store;

C. That YESS's investments would be used for the stated business purposes; and

D. That YESS would receive a 30% return on investment plus return of principal by specified dates.

100. Those representations were false when made.

101. Upon information and belief, Ms. Walker knew the representations were false when she made them or made them with reckless disregard for their truth.

102. Ms. Walker made the misrepresentations, under the guise of legitimate investment opportunities, with the intent to induce YESS to transfer funds to her directly or through the entities she controlled.

103. YESS reasonably relied on the misrepresentations in deciding to invest $150,000 in 1633 WVANE and approximately $50,000 in TMG.

104. As a direct and proximate result of YESS's reliance on these fraudulent misrepresentations, YESS has suffered monetary losses in the amount to be determined at trial but not less than $75,000.

105. Ms. Walker's conduct was willful, wanton, and malicious, warranting of an award of punitive damages.

**COUNT II**
**VIOLATIONS OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT AND SEC RULE 10b-5**
**(YESS vs. All Defendants)**

106. Plaintiffs allege and incorporate by reference the factual allegations set forth above as if fully set forth herein.

107. The investment agreements at issue constitute "securities" within the meaning of Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 CFR § 240.10b-5.

108. Specifically, the investment agreements involved (i) an investment of money; (ii) in a common enterprise; (iii) with an expectation of profits; (iv) derived solely from the efforts of others, namely, Ms. Walker and the corporate defendants.

109. In connection with the purchase and sale of these securities, Defendants employed devices, schemes, and artifices to defraud YESS.

110. Defendants made untrue statements of material fact and omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

111. Specifically, Defendants made misrepresentations and omitted material facts regarding the following:

A. The legitimacy of the purported business projects;

B. Defendants' intended use of YESS's; and

C. Defendants' intentions regarding return of YESS's principal or payment of returns.

112. Defendants made those misrepresentations and omissions using means and instrumentalities of interstate commerce, including email communications and interstate wire transfers.

113. Defendants acted with *scienter* in making these misrepresentations and omissions, knowing they were false or acting with reckless disregard for their truth.

114. YESS reasonably relied on Defendants' misrepresentations and omissions.

115. As a direct and proximate result of Defendants' violations of Section 10(b) and Rule 10b-5, YESS has suffered monetary losses in the amount to be determined at trial but not less than $75,000.

**COUNT III**
**BREACH OF CONTRACT**
**(YESS vs. All Defendants)**

116. Plaintiffs allege and incorporate by reference the factual allegations set forth above as if fully set forth herein.

117. The First Investment Agreement constitutes a valid and binding contract between YESS and 1633 WVANE.

118. YESS performed all obligations required under the First Investment Agreement by remitting $150,000, purportedly to 1633 WVANE.

119. Ms. Walker and 1633 WVANE breached the First Investment Agreement by failing to remit to YESS the initial investment amount plus the promised 30% return.

120. Ms. Walker is personally liable for this breach on two independent grounds. First, upon information and belief, 1633 WVANE does not exist as a legal entity, in which case Ms. Walker personally accepted YESS's funds and is directly liable for their return. Second, even if 1633 WVANE does exist as a legal entity, piercing the corporate veil is appropriate because, as set forth above, Ms. Walker exercised complete control over 1633 WVANE, failed to observe corporate formalities, commingled her personal finances with those of the entity, and used the entity as an instrument to perpetrate fraud upon YESS.

121. As a direct and proximate result of Ms. Walker's and 1633 WVANE's breach, YESS has suffered monetary losses in the amount to be determined at trial but not less than $75,000.

**COUNT IV**
**BREACH OF CONTRACT**
**(YESS vs. All Defendants)**

122. Plaintiffs allege and incorporate by reference the factual allegations set forth above as if fully set forth herein.

123. The Second Investment Agreement constitutes a valid and binding contract between YESS and TMG.

124. YESS performed all obligations required under the Second Investment Agreement by remitting approximately $50,000, purportedly to TMG.

125. Ms. Walker and TMG breached the Second Investment Agreement by failing to remit to YESS the initial investment amount plus the promised 30% return.

126. Ms. Walker is personally liable for this breach on two independent grounds. First, upon information and belief, TMG does not exist as a legal entity, in which case Ms. Walker personally accepted YESS's funds and is directly liable for their return. Second, even if TMG does exist as a legal entity, piercing the corporate veil is appropriate because, as set forth above, Ms. Walker exercised complete control over TMG, failed to observe corporate formalities, commingled her personal finances with those of the entity, and used the entity as an instrument to perpetrate fraud upon YESS.

127. As a direct and proximate result of Ms. Walker's and TMG's breach, YESS has suffered monetary losses in the amount to be determined at trial but not less than $75,000.

**COUNT V**
**UNJUST ENRICHMENT**
**(YESS vs. All Defendants)**

128. Plaintiffs allege and incorporate by reference the factual allegations set forth above as if fully set forth herein.

129. YESS conferred a benefit upon Defendants by remitting approximately $150,000 and $50,000 in connection with the First and Second Investment Agreements, respectively, for a total of approximately $200,000.

130. Defendants had knowledge of and accepted this benefit.

131. Defendants have retained this benefit without providing any return to YESS.

132. Retention of this benefit without providing the promised business projects or returns would be unjust and inequitable. To the extent 1633 WVANE and/or TMG do not exist as legal entities, Ms. Walker herself received and retained YESS's funds directly and has been unjustly enriched thereby. To the extent those entities do exist, Ms. Walker has been unjustly enriched through her complete dominion and control over both entities and their assets.

133. Defendants have been unjustly enriched in an amount to be determined at trial but not less than $200,000.

**COUNT VI**
**COMMON LAW FRAUD**
**(Ms. Maheshwari vs. Ms. Walker)**

134. Plaintiffs allege and incorporate by reference the factual allegations set forth above as if fully set forth herein.

135. Ms. Walker, acting on behalf of herself and the corporate defendants, made material misrepresentations of fact to Ms. Maheshwari, including but not limited to the following:

A. That monies were needed to help a victim of domestic abuse relocate herself and her children; and

B. That she intended to reimburse Ms. Maheshwari;

136. Those representations were false when made.

137. Upon information and belief, Ms. Walker knew the representations were false when she made them or made them with reckless disregard for their truth.

138. Ms. Walker made the misrepresentations with the intent to induce Ms. Maheshwari to transfer funds to her.

139. Ms. Maheshwari reasonably relied on the misrepresentations in deciding to remit the payment to Ms. Walker.

140. As a direct and proximate result of her reliance on these fraudulent misrepresentations, Ms. Maheshwari has suffered monetary losses in the amount of $500.00.

141. Ms. Walker's conduct was willful, wanton, and malicious, warranting of an award of punitive damages.

## PRAYER FOR RELIEF

142. WHEREFORE, Plaintiffs respectfully request that this Court:

A. Award YESS compensatory damages in an amount to be determined at trial;

B. Award Ms. Maheshwari compensatory damages in the amount of $500.00;

C. Award Plaintiffs punitive damages for Defendants' willful, wanton, and malicious conduct in an amount to be determined at trial;

D. Hold Ms. Walker personally liable for all obligations of 1633 WVANE and TMG to YESS, whether on the grounds that those entities do not exist as legal entities, or on the grounds that piercing the corporate veil of those entities is appropriate;

E. Award pre-judgment interest;

F. Award attorneys' fees and costs; and

G. Grant such further relief as the Court deems necessary and proper.

**JURY DEMAND**

Trial by jury is demanded as to all issues eligible for such trial.

Respectfully Submitted,

/s/ ______________________________

David G. Ross
D.C. Bar No. 469427
GARRIS HORN LLP
1 Research Ct., Suite 450
Rockville, MD 20850
Phone: (301) 610-7730
Email: dross@garrishorn.com

*Counsel for Plaintiffs*

Dated: May 12, 2026